**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1163**

ANTONIO ROBLERO-MORALES, a/k/a Everardo Valasquez-Reyes, a/k/a Evrardo Valasquez-Reyes, a/k/a Ebelardo Velasquez-Reyes, a/k/a Antonio Roblero Morales,

Petitioner,

v.

DANA JAMES BOENTE, Acting Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: January 24, 2017               Decided: February 3, 2017

Before MOTZ, DUNCAN, and HARRIS, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:** Bradley Bruce Banias, BARNWELL, WHALEY, PATTERSON, AND HELMS, Charleston, South Carolina, for Petitioner. Craig Alan Newell, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Emily Anne Radford, Assistant Director, Kohsei Ugumori, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Antonio Roblero-Morales petitions for review of a Board of Immigration Appeals (Board) order affirming the decision of the Immigration Judge (IJ) to deny him relief from removal. Roblero contends that the IJ violated Roblero's procedural due process rights. We deny the petition for review.

I.

On or around September 13, 2013, border patrol agents apprehended Roblero, a citizen of Guatemala, when he attempted to enter the United States unlawfully. The Department of Homeland Security charged Roblero as removable, found that he had a credible fear of persecution or torture, and issued him a Notice to Appear. At Roblero's initial removal hearing, he conceded removability but sought relief from removal on the bases of asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

After receiving a two-month continuance to find counsel, the IJ scheduled a second hearing. At this hearing, Roblero informed the IJ that he left Guatemala because gangs "kept extorting [him] all the time" and, subsequently, "wanted [him] to work for them." After hearing this summary of Roblero's claim, the IJ granted him a second continuance. In doing so, the IJ told Roblero:

2

All right. Sir, I'm going to hear your case, but it's not a very strong case and the reason is because I understand there's a lot of gangs in Guatemala and they try to extort money from people or try to recruit people. That doesn't provide a legal basis for you to get asylum here in the United States. But because you've already filed an asylum application I'm going to give you a hearing.

After the IJ gave Roblero the date for the next hearing, Roblero asked the IJ if he could "fill out some things that [he] left out on page 5" of his asylum application. Following an off-the-record discussion about other issues, Roblero again asked to "complete page 5" so that it reflected his contention that he fled Guatemala because gangs threatened to kill him. The following discussion ensued:

MR. ROBLEO-MORALES [sic]:

When the official caught me in the desert I tried to explain to him that I was afraid to go back to my country, but they wouldn't let me explain and he told me he did not make the law.

JUDGE:

Okay. Well, sir, you filed an application for -- saying you're afraid of the gangs because they were extorting money from you. Right?

MR. ROBLEO-MORALES [sic]:

That is true.

JUDGE:

And is that the reason why you're afraid to go back?

MR. ROBLEO-MORALES [sic]:

3

Yes.  Because they threatened me that they were going to kill me, so I left running away from my house.

JUDGE:

All right.  Well, sir, I'm going to hear your case on July 31st.  Okay.  Do you have any questions?

MR. ROBLEO-MORALES [sic]:

No.

JUDGE:

All right.  I'll see you on July 31st.

The IJ then adjourned the hearing without acting on Roblero's request to "complete" page 5.

The IJ held Roblero's merits hearing, as scheduled, on July 31, 2014.  Roblero testified that he left his home in 2012 because of gang extortion.  He testified that the gang first charged him 100 quetzales (the Guatemalan currency), which he paid.  Next, the gang charged him 300 quetzales, and he paid that as well.  However, when the gang sought 400 quetzales, Roblero refused.  The gang members told Roblero that if he refused to pay he would need to work for them to collect money from other people.  Instead of complying, Roblero fled.  Roblero acknowledged that while in Guatemala, gangs never harmed him, but he testified that he knew "a lot of people who have lost their lives for the same thing."

Leaving his family behind, Roblero entered Mexico in April 2013. He remained there for five months, when unknown individuals kidnapped him. Roblero's captors beat him and tried to learn information about his family for extortionary purposes, but he provided none. After a month, Roblero's captors released him when they found information about another captive's family. Roblero then fled to the United States, where border patrol agents apprehended him.

At the conclusion of the hearing, the IJ orally denied Roblero's asylum application on the ground that "being extorted by gang members in Guatemala [was] not a basis for which [he] could grant [Roblero] asylum." The IJ subsequently issued a written decision further explaining his reasoning. The IJ found Roblero credible, but denied his application due to the lack of proof of "the requisite nexus between the alleged persecution he perceived in Guatemala and a statutorily protected ground." The IJ pointed out that "merely being subject to extortion attempts does not provide the required on account of grounds so as to be eligible for asylum." The IJ also denied Roblero's other grounds for relief.

Roblero, now with counsel, timely appealed to the Board. He asserted that the IJ erred in not allowing him to amend his asylum application, and that the IJ improperly prejudged his case. Roblero explained that, if permitted to do so, he would

5

have testified to "his status as a taxi driver" and "his direct political actions against the criminal organizations and corrupt government supporters."

On January 19, 2016, the Board dismissed Roblero's appeal. The Board held that the IJ did not violate Roblero's due process rights because even though Roblero was not permitted to amend his asylum application, "he was provided an opportunity to present his claim during the hearing and has shown no prejudice resulting from the Immigration Judge's actions." Roblero timely filed this Petition for Review of the Board's Order.

## II.

Roblero's petition contends only that the IJ's denial of asylum violated his procedural due process rights. "We review due process claims alleging procedural failings in the immigration context de novo." Singh v. Holder, 699 F.3d 321, 335 (4th Cir. 2012). Because the Board's order combined its own reasoning with the IJ's, we review both orders. Martinez v. Holder, 740 F.3d 902, 908 n.1 (4th Cir. 2014).

To prevail, Roblero must prove both that the IJ's actions rendered the proceedings "fundamentally unfair," and that the defect the IJ introduced into the proceedings "prejudiced the outcome of the case." Anim v. Mukasey, 535 F.3d 243, 256 (4th Cir. 2008). To show prejudice, Roblero must demonstrate that

6

"the defect, in retrospect in [this] specific case, was 'likely to impact the results of the proceeding.'" Id. (quoting Rusu v. INS, 296 F.3d 316, 320-21 (4th Cir. 2002)). Roblero maintains that the IJ improperly prevented him from amending his asylum application to specify his grounds for removal and that the IJ prejudged his case. The Government argues that, assuming the IJ erred, Roblero cannot demonstrate prejudice. We consider each of Roblero's arguments in turn, recognizing that due process mandates only "a meaningful opportunity to present [a] claim," a requirement falling short of an "obligation to ensure . . . a meaningful presentation." Rusu, 296 F.3d at 324.

## A.

Roblero contends that the IJ's refusal to allow him to amend his application prejudiced him because it precluded the development of a full record. This failure, Roblero claims, prevented him from explaining the nexus between his persecution and his membership in a protected class.

The IJ, however, asked several questions that gave Roblero an opportunity to provide a further explanation of his claim. These open-ended inquiries included questions such as "Why did you leave Guatemala the last time?"; "What was the reason you left your home country in 2012?"; "Sir, while we were off the record you indicated you wanted to say something. What is it

7

you wanted to tell the Court?"; and "Anything else you want to tell me?"

These questions gave Roblero the opportunity to explain the full nature of his claim. In response to them, Roblero never specified the protected group to which he claimed to be a member. The record contains no indication that the IJ prevented Roblero from providing testimony beyond the content of his application, or that Roblero refrained from offering any testimony out of a fear that the IJ would not allow it.

Given this record, Roblero cannot show prejudice. Not only did the IJ offer him a chance to put into the record anything he wished, but there is no indication that Roblero had any evidence that would entitle him to relief. We thus have no basis on which to hold that the IJ's failure to permit him to amend his asylum application prejudiced Roblero.

B.

Roblero's contention that the IJ prejudged his case also fails. He asserts that this prejudgment was evidenced by the IJ's remark that Roblero did not have a strong case and the IJ's assertedly preconceived notion that gangs in Guatemala frequently try to extort and recruit individuals for money.

The record demonstrates that in fact Roblero's case was not a strong one and that the IJ denied Roblero's application not because of a belief about the ubiquity of Guatemalan gangs'

8

extortion efforts, but because, as a matter of law, this motive did not implicate Roblero's status as a member of any protected group. Roblero provides no authority for the position that this legal conclusion is wrong. C.f. Zelaya v. Holder, 668 F.3d 159, 167 (4th Cir. 2012) ("In sum, the BIA's conclusion that Zelaya's proposed social group of young Honduran males who refuse to join MS-13, have notified the police of MS-13's harassment tactics, and have an identifiable tormentor within the gang does not qualify as a particular social group within the INA is not manifestly contrary to the law or an abuse of discretion.").

Accordingly, we cannot hold that any prejudgment by the IJ prejudiced Roblero's case.


                              III.

Since Roblero cannot demonstrate that any of the IJ's purported errors altered the outcome of the proceedings, his due process challenge fails. For the foregoing reasons, the petition for review is

                                        DENIED.